**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHEVRON U.S.A., INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1549 |
| | § | |
| RONALD GUAJARDO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Chevron U.S.A., Inc., filed a Verified Application for a Temporary Restraining Order and Motion for Preliminary Injunction. (Docket Entry No. 1). Based on Chevron's Application and the supporting Memorandum of Law, the supporting declarations and documentary evidence, and the applicable law, this court enters the following temporary restraining order against Ronald Guajardo and sets a hearing for **May 30, 2017** at 9:30 a.m. The reasons are set out below.

Before issuing a temporary restraining order, a court must find that four conditions are present:

> (1) a substantial likelihood that the plaintiff will prevail on the merits;
> (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) a showing that the threatened injury to the plaintiff outweighs the potential harm to defendants if the injunction issues; and (4) a showing that issuance of the injunction will not disserve the public interest.

*Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). A court may issue a temporary restraining order without notice to the other party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).  An order must "describe the injury and state why it is irreparable [and] state why the order was issued without notice[.]"  FED. R. CIV. P. 65(b)(2).

Chevron has filed verifications from Kyle Simson, Chevron's Midcontinent Business Unit Commercial Team Lead; Robert Hunziker, Chevron's General Manager of Commercial Support (North America); Scott McKay, Chevron's Commercial Manager for the Midcontinent Business Unit; and Nick Vitruk, a forensics investigator for Chevron Global Security.  (Docket Entry No. 1). These filings form the basis of the temporary relief ordered.

Chevron and the defendant, Swift Technical, are parties to an International Master Agreement No. IMA/169A Engineering and Technical Staffing Services contract dated January 1, 2013, known as the Master Agreement.  (Docket Entry No. 1, Ex. 1 at ¶21).  Chevron and Swift Technical are parties to a Service Order dated March 7, 2016 that incorporates by reference the terms of the Master Agreement.  (*Id.*, Ex. 2).  The Swift defendants provided engineering and temporary staffing services to Chevron under the terms of that Service Order.  The defendant, Ronald Guajardo, contracted with Chevron to work under the Service Order to provide natural gas liquids and gas-processing related services.  *Id.*

Mr. Guajardo was to use his expertise to assist on commercial project teams.  The work included making recommendations on decisions related to gas processing and natural gas liquids handling.   He also assisted in revising and negotiating agreements for gas processing and natural gas liquids "fractionation" and transportation and storage.  His work included developing or providing input into economic models for gas processing and natural gas liquids fractionation. (Docket Entry No. 1-17 at ¶ 4).

Mr. Guajardo had access to Chevron's confidential, proprietary, and trade-secret information. This information included subsurface analysis, "playbooks" (type curve, fluid composition, and commercial), privileged materials relating to litigation matters he was involved in, "shape files,"

management presentations, maps, and requests for proposals. Chevron has presented verifications stating that it paid millions of dollars to acquire this information.

Chevron protects this confidential and trade-secret information by password protection for its computers, network, and other databases. Chevron limits access to certain databases to individuals who require the information they contain. Chevron restricts access to its facilities. Cabinets containing confidential information are locked, and keys are given only to those who need the information. Chevron requires its employees to return all confidential and trade-secret information when they end their employment with Chevron; requires confidentiality agreements from employees; and regularly trains employees on their obligations as to confidential and trade-secret information.

Mr. Guajardo was subject to confidentiality obligations. Chevron informed Mr. Guajardo of these obligations during compliance training at the start of his employment, and he acknowledged these obligations in writing after his termination but before his departure.

Chevron's submissions stated that Mr. Guajardo downloaded 8,290 files to two separate external-storage devices between February 26, 2017 and March 21, 2017. Ninety-nine percent of these files were downloaded on the evening of Sunday, February 26, 2017, and the morning of February 27, 2017. The download included 3,000 unique files containing Chevron's confidential information and trade secrets. On multiple dates in March 2017, Mr. Guajardo downloaded additional confidential information and trade secrets to an external storage device. Mr. Guajardo also sent confidential information and trade secrets from his Chevron email account to his personal email account during and after his employment. (Docket Entry No 1-18).

Chevron's submissions show that there was no legitimate business reason for Mr. Guajardo to have downloaded or emailed to his personal email account the confidential and trade secret information. Downloading and emailing this information to a personal email account was against

Chevron's written policies, which Mr. Guajardo was given when he began working and after he acknowledged the terms and conditions.

To prevail on its claims under the Defend Trade Secrets Act and the California Uniform Trade Secrets Act, Chevron must show that Mr. Guajardo acquired its trade secrets by improper means or had reason to know that the trade secrets were acquired by improper means. 18 U.S.C. § 1836(b); Cal. Civ. Code § 3426, *et seq*. The Verified Application and supporting documents sufficiently show that Chevron is likely to succeed on the merits of its claims that Mr. Guajardo has misappropriated confidential and trade-secret information in violation of both federal and state Trade Secrets Acts. The submissions are also sufficient to show a likelihood of success on the merits of the claim that Mr. Guajardo's misappropriation violated the Master Agreement.

Chevron's submissions are sufficient to show that it will suffer irreparable harm without a temporary restraining order. "The damages occasioned by a case involving breach of confidentiality and misappropriation of trade secrets is, by its nature, irreparable and not susceptible of adequate measurement for remedy at law." *Glycobiosciences, Inc. v. Woodfield Pharmaceutical, LLC*, 2016 WL 1702674, at *8 (S.D. Tex. Apr. 27, 2016); *see, e.g., Traders Intern., Ltd. v. Scheuermann*, 2006 WL 2521336, at *9 (S.D. Tex. Aug. 30, 2006) (quoting *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996) ("[I]njury resulting from the breach of non-compete covenants is the epitome of irreparable injury.")). This established law is particularly applicable when, as here, a former contract employee takes confidential information and trade secrets while pursuing employment with industry competitors. (Docket Entry No. 1 at ¶¶ 43–44).

The balance of hardships also favors a temporary restraining order. Chevron seeks to restrain Mr. Guajardo from improperly retaining or using Chevron's confidential information and trade secrets, not to enjoin him from seeking employment or working with competitors. Nor does Chevron seek to enjoin the Swift defendants. The balance of hardships favors a temporary

restraining order.  *See, e.g., Glycobiosciences*, 2016 WL 1702674, at *9 ("[T]he threatened injury of Glyco's trade secrets falling into the hands of a competitor outweighs the threatened harm to Woodfield."); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2013 WL 2151553, at *14 (E.D. Cal. May 16, 2013) ("Courts have found that the balance of hardships tips in favor of a plaintiff seeking an injunction which would 'merely prohibit the defendants from misappropriating the trade secrets of the plaintiff.'").

Chevron seeks an order that Mr. Guajardo provide a third-party forensics vendor with access to all locations where Mr. Guajardo holds electronic information including devices, systems, cloud storage, or remote storage platforms that he has used since May 19, 2016.  The temporary restraining order is not this broad.  Although Mr. Guajardo is not required to provide access to all locations where he stores electronic information, he is enjoined from distributing, copying, printing, transferring, disclosing, selling, publishing, describing, modifying, or using this information in any way during the pendency of this temporary restraining order.

Until June 7, 2017, or the court issues a further order, whichever occurs earlier, Mr. Guajardo is enjoined from:

    a.    distributing,  transferring, disclosing, selling, publishing, or describing the confidential information and trade secrets to any person or entity;

    b.    copying, printing, modifying, or using the confidential and trade secret information in any way; and from opening or viewing the electronic files on any device or electronic storage platform or hard copy.

A hearing will be held on **May 30, 2017** at 9:30 a.m in Courtroom 11-B.  Chevron must post a $1,000 bond under FED. R. CIV. P. 65(c).

SIGNED on May 24, 2017, at Houston, Texas.

*Lee H. Rosenthal*

Lee H. Rosenthal
Chief United States District Judge